IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-05686-PAB

RAFAEL NOVOA RODRIGUEZ,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
NATHAN RASPER,[1] in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
DAVID J. VENTURELLA, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Rafael Novoa Rodriguez's Verified Petition for Writ of Habeas Corpus [Docket No. 1] and Petitioner-Plaintiff's Motion for Temporary Restraining Order And/Or Preliminary Injunction [Docket No. 2]. Respondents filed a response. Docket No. 7.

## I. BACKGROUND[2]

Petitioner is a native of Mexico. Docket No. 1 at 4. He entered the United States in 2008 and has resided within the country for the past 17 years. *Id.* at 4, 9. On October 8, 2026, petitioner was leaving his house, when "two unmarked black vehicles"

---

[1] Nathan Rasper is hereby automatically substituted as a party in his official capacity, in accordance with Federal Rule Civil Procedure 25(d).

[2] The following facts are undisputed unless otherwise noted.

blocked his path, and "[f]our or five men in plainclothes, armed with guns, surrounded his vehicle and pounded on his windows, demanding that he exit his vehicle." *Id.* at 9. The men did not identify themselves as Immigration and Customs Enforcement ("ICE") or as law enforcement. *Id.* Two of the men "forcibly dragged him out of the vehicle and threw him on the pavement," and one placed his knee on petitioner's back, while pinning his arms behind him. *Id.* They handcuffed petitioner, told him that he had no rights, and slammed him into the side of the car. *Id.* at 10. "At no point during this entire encounter was [petitioner] told who the men were or what authority they had to arrest him." *Id.*

Petitioner was transported to a federal building, where he learned that the men were ICE agents, and he was given a I-200 Warrant for Arrest. *Id.* Petitioner was "also given—but not properly served—a contradictory Notice of Reinstatement alleging that he had an expedited removal order issued on May 15, 2008 that ICE seeks to reinstate. This Notice of Reinstatement is not signed by any ICE officer and the certificate of service is not completed." *Id.* at 10-11. Since his arrest, ICE has neither issued a charging document to initiate removal proceedings against petitioner, nor "served him with a signed and executed Notice of Reinstatement of Removal." *Id.* at 11. He remains detained at an immigration detention facility in Aurora, Colorado. *Id.*

On October 30, 2026, petitioner filed a counseled Verified Petition for Writ of Habeas Corpus, raising two claims for relief: (1) "Violation of Fifth Amendment of the U.S. Constitution Procedural Due Process"; and (2) "ICE Jail Mr. Novoa Rodriguez in Violation of Regulations, and Thus, the *Accardi* Doctrine." *Id.* at 23-25. As relief, petitioner seeks his immediate release. *Id.* at 26.

On November 12, 2026, respondents filed a response, stating that "[f]or purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition." Docket No. 7 at 1-2. They assert that, if the Court grants the petitioner, "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, release Petitioner from detention." *Id.* at 2 (quoting *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026).

## II. ANALYSIS

As petitioner alleges, because respondents issued an I-200 Warrant, but also gave petitioner a Notice of Reinstatement, albeit allegedly improperly,[3] it is unclear whether petitioner's detention is governed by 8 U.S.C. § 1226(a) or 8 U.S.C. § 1231. In their response, respondents cite *Santillan Quiroz*, seemingly conceding that petitioner is detained pursuant to 8 U.S.C. § 1226(a). Docket No. 7 at 2; *see also Santillan Quiroz*, 180 F.4th at 1237 ("[N]oncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond)."). Because respondents offer no argument or support to show that petitioner is detained under § 1231(a), the Court analyzes whether petitioner's detention is proper under § 1226(a).

Among other claims, petitioner raises a due process challenge based on ICE's failure to serve him with a Notice to Appear ("NTA") before issuing him an I-200 Warrant

[3] "Proper reinstatement of a final order of removal requires ICE officers to make certain determinations required by [8 C.F.R.] § 241.8(a) and to give notice of reinstatement as required by § 241.8(b)." Cartagena *Jaco v. Blanche*, 2026 WL 1786007, at *4 (S.D.N.Y. June 22, 2026) (concluding that detention under § 1231(a) contravenes § 1231's implementing regulations and violates due process where immigration officers fail to reinstate a prior order of removal *before* a noncitizen is arrested pursuant to a Form I-205 Warrant).

for his arrest. Docket No. 1 at 17, 21, 24 ("At least three courts in this district have repeatedly granted habeas relief, including immediate release, where ICE arrested and detained individuals before a Notice to Appear was issued to initiate proceedings.").

Section 1226(a) authorizes arrest and detention only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (providing that a noncitizen may be arrested and detained only "[o]n a warrant issued by the Attorney General"); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) ("[Section 1226(a)] authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest."). The Department of Homeland Security regulations likewise permit immigration officers to "arrest[] and take[] into custody" individuals suspected of violating the immigration laws after the officers have obtained a warrant and a Notice to Appear. *See* 8 C.F.R. §§ 236.1(b), 1236.1(b); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (observing that ICE officers "possess extremely broad authority" to arrest individuals subject to removal proceedings after a warrant *and* NTA have issued).

Courts in this District have "rejected the notion that an I-200 warrant issued either *after* or *concurrent* with an arrest made without an assessment of individual flight risk transforms an unlawful warrantless arrest into a lawful, warranted one." *Id.* at 1226; *Martinez-Salamanca v. Baltazar*, No. 26-cv-02410-PAB, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026). The "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Choglло Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025). "If the alien [detained under § 1226(a)] has not been arrested on a warrant, then the subsequent provisions giving the

Attorney General discretion to detain or release 'the arrested alien' are likewise not triggered." *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023); *see also Quezada-Estrada v. Lyons*, No. 26-cv-01599-NYW, 2026 WL 1361880 (D. Colo. May 15, 2026), at *5 ("Fundamentally, Respondents may not detain first, and justify later." (collecting cases)).

Without a warrant, the government's authority to make immigration arrests is "more limited." *Ramirez Ovando*, 810 F. Supp. 3d at 1216 (quoting *Arizona v. United States*, 567 U.S. 387, 408 (2012)). An immigration officer may make a warrantless arrest "if he has reason to believe" that a noncitizen is unlawfully present in the United States "and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Courts have interpreted the "reason to believe" language as equivalent to the constitutional probable cause standard and requiring a particularized finding of probable cause that the noncitizen is likely to escape. *See Ramirez Ovando*, 810 F. Supp. 3d at 1216-17 (citing *Roa-Rodriguez v. United States*, 410 F.2d 1206, 1209 (10th Cir. 1969)) (further citations omitted); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025).

According to the allegations in petitioner's habeas petition, the government did not comply with these requirements when it arrested and detained him. Petitioner alleges that he was given a Form I-200 warrant on October 8, 2026, after he was arrested and transported to the federal building following his arrest. Docket No. 1 at 9-10. Further, petitioner asserts that he still has not been given an NTA or any charging document placing him in removal proceedings. *See id.* at 11, 16. Respondents do not contest these allegations or argue that petitioner was arrested with a valid warrant. *See*

*generally* Docket No. 7. Given petitioner's unrefuted claim that an NTA has not been issued, the Court finds that the Form I-200 warrant was invalid. Therefore, petitioner was not arrested pursuant to a valid warrant, in contravention of § 1226(a) and due process. *See Izquierdo Navarro v. Bondi*, No. 25 cv-04210-NYW, 2026 WL 468582, at *2 (D. Colo. Feb. 18, 2026) (noting that "ICE violating its own regulations in detaining an individual is a due process violation.").

Further, respondents have not provided any argument or set forth any evidence indicating that petitioner's warrantless arrest was proper under § 1357. *See generally* Docket No. 7. Therefore, they have waived any arguments in opposition. *Quezada-Estrada*, 2026 WL 1361880, at *6 ("A party forfeits an issue it does not support with legal authority or argument." (citing *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (quotation omitted))).

The Court finds that respondents lacked statutory authority to arrest petitioner, and his detention is thus unlawful. The habeas application will be granted as to petitioner's claim that his due process rights were violated when he arrested before an NTA issued.[4] Respondents acknowledge that the appropriate relief would be an order directing them to release petitioner. Accordingly, the Court will order petitioner released because "[r]elease is an appropriate habeas remedy where a petitioner's current detention lacks a 'lawful predicate.'" *Quezada-Estrada*, 2026 WL 1361880, at *6 (quoting *Ahmed M. v. Bondi*, 2026 WL 25627, *3 (D. Minn. Jan. 5, 2026)).[5]

---

[4] Because the Court will order petitioner's release based on due process violation stemming from the warrantless arrest, it will not reach petitioner's other claims for relief.

[5] Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act. Docket No. 1 at 26; *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir.

## III. CONCLUSION

Therefore, it is

**ORDERED** that petitioner's Verified Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED.** It is further

**ORDERED** that respondents shall release petitioner from custody within **48 hours** of the issuance of this order. It is further

**ORDERED** that respondents shall file a status report within **four days** of the issuance of this order, confirming that petitioner was released from custody. It is further

**ORDERED** that Petitioner-Plaintiff's Motion for Temporary Restraining Order And/Or Preliminary Injunction [Docket No. 2] is **DENIED as moot.**

DATED November 13, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

2025). But this District's Local Rules require that those requests be made by separate motion. *See* D.C.Colo.LCivR 54.3. A fee award is thus inappropriate at this juncture.